IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN MAXWELL MONTIN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:07CV3271 |
| | ) | |
| v. | ) | |
| | ) | |
| BILL GIBSON, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' competing motions for summary judgment. For the reasons set forth below, Plaintiff's motion, (filing no. 111) is denied and Defendant's motion, (filing no. 108) is granted.

STATEMENT OF FACTS

1. Plaintiff John Maxwell Montin ("Montin") is a Florida resident. Filing No. 104, ¶1.

2. In 1993, Montin was criminally prosecuted in Hayes County Court for the charges of Use of a Firearm in the Commission of a Felony and First Degree False Imprisonment. Filing Nos. 104, ¶2; 113-29.

3. Montin was found to be not responsible by reason of insanity and was committed on an inpatient basis to the Lincoln Regional Center ("LRC"), by order of the Hayes County District Court. Filing No. 104, ¶3.

4. Defendant Bill Gibson ("Gibson") is the current administrative head of the LRC, an agency under the administrative supervision of the Nebraska Department of Health and Human Services ("DHHS"). Filing No. 110-1, ¶1.

5.  In 1995, Montin was transferred to S-2, a less restrictive ward than the ward where he was originally placed. Filing No. 104, ¶5.

6.  Montin currently resides in S-1, the least restrictive ward at the LRC security facility, referred to as the Forensic Mental Health Services ("FMHS"). Filing No. 104, ¶6.

7.  As of 1995, the FMHS administered a five-level program which included codes. Filing No. 104, ¶7. These codes determined levels of freedom or privileges the patients enjoyed both within the grounds and during on off-grounds activities. Filing No. 115, ¶10.

8.  In 1995, Montin earned Code-4 status which was confirmed at the annual review hearing held by the Hayes County District Court. Filing No. 104, ¶¶ 8-9.

9.  Code-4 status allowed Montin to take unsupervised walks about the LRC grounds. Filing No. 104, ¶12.

10. From mid-1995 until near the end of 1996, Montin took unsupervised walks about the grounds "nearly every day." Filing No. 104, ¶11.

11. After every unsupervised walk, Montin returned to the facility. There are no reports of any incidents or concerns with Montin's unsupervised walks. Filing No. 104, ¶12.

12. On September 19, 1995, a convicted sex offender, who had been committed to the LRC Sex Offender Program, "eloped" from the LRC. Filing No. 104, ¶14.

13. All on-grounds activities, including unsupervised walks on the grounds of LRC, were suspended immediately after the sex offender escaped. Filing No. 104, ¶¶17-18.

14. Sometime thereafter, Code-4 privileges were suspended and later eliminated after the convicted sex offender escaped the LRC's grounds. The changes were made in the interest of public safety and were applied equally to all LRC patients. Filing No. 110-2 ¶3.

15. The official written policy regarding Code-4 privileges was not amended until sometime after January of 2004, (filing no. 113-19), although the restriction and elimination of Code-4 privileges occurred sometime prior to 2000. Filing No. 110-2, ¶3.

16. Montin was not returned to Code-4 status and his unsupervised walks have not been reinstated. Filing No. 104, ¶¶ 18 & 24.

17. The LRC makes annual reports (the "Reports") to the Hayes County District Court discussing Montin's status and progress. In turn, the Hayes County District Court issues an annual order based upon the Reports. See, e.g., Filing No. 113-11.

18. Each of these annual reports and orders indicated there has been no significant change in Montin's overall diagnosis or mental status since admission. The Reports further noted that Montin resisted medication and was unwilling or unable to accept his diagnosis of having a mental illness. The Hayes County District Court Orders held "the Lincoln Regional Center is the least restrictive treatment setting for meeting the needs of Mr. Montin and ensuring the safety of the general public." See, e.g., Filing Nos. 113-4, 113-9, & 113-16.

3

19. An order of the District Court of Hayes County, dated April 15, 1997, provided that "the privileges requested [in the LRC annual report] are hereby granted, to wit:

    . . .

    e. Permission is granted to allow Mr. Montin, at such time that he has demonstrated continuous participation in and positive response to treatment, to go unescorted on the grounds of the LRC for preapproved periods of time for therapeutic purposes. To date, Mr. Montin has not yet fully participated in treatment, and therefore, has not yet met the conditions for this privilege. Such outings would be granted by the treatment team based upon continued participation and positive response in treatment, behavior warranting, and would be withdrawn when the treatment team feels his behavior does not warrant such a privilege or that a deterioration in his condition has occurred. Final approval or denial of such privilege would be determined by the defendant's treating physician. This privilege is known as Code 4.

    Filing No. 113-6.

20. The report and court order from 1998 are silent on whether either Montin's treating physicians or the court would permit Code-4 privileges. Filing No. 113-9.

21. Each and every report and court order, each issued from April of 2001 through the present recommend Montin's privilege level be restricted to Code 3 – that is, restricting Montin to supervised activities on the LRC's grounds. See, e.g., Filing Nos. 113-14, 113-15, & 113-20.

22. The original decision to restrict Montin and other residents of the LRC from taking unsupervised walks on the grounds of LRC was solely an administrative decision and was not based on any consideration from his treatment team. Filing No. 104, ¶¶ 28-30.

23. Montin was restricted from taking unsupervised walks after the elopement of the sex offender and a policy terminating unsupervised walks on the grounds of LRC was enforced sometime after the elopement but prior to 2000. Filing No. 104, ¶17; Filing No. 110-2, ¶3; Filing No. 113-38; & Filing No. 39, ¶7.

24. Currently, only patients who are on transitional or discharge status are allowed to participate in some limited unsupervised activities at LRC. These unsupervised activities are incorporated into the discharge or transitional plan. Filing No. 109, ¶3.

25. Mr. Montin is not currently, nor has he ever been, on transitional or discharge status. Filing No. 109, ¶3.

26. Montin has access to an outside area for supervised outdoor activities. (Filing No. 110-1, ¶4).

ANALYSIS

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits . . . show that there is no genuine issue as to any material fact and that the move party is entitled to a judgment as a matter of law." In order to avoid summary judgment the opposing party must "set forth specific facts showing that there is a genuine issue of material fact for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if the evidence presented "is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**Due Process**

As to his substantive due process claim, the plaintiff must demonstrate (1) he or she has a protected liberty interest or property interest at stake, and (2) he or she was deprived of such an interest without due process of the law. See Van Horn v. Nebraska State Racing Com'n, 304 F. Supp. 2d 1151 (2004). To constitute a liberty interest, an individual must have a legitimate claim or entitlement to the subject of the deprivation which rises to more than a unilateral hope or expectation. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). In "order to establish a liberty interest for a due process claim, the right has to be found in one of two places. The rights are found either under the U.S. Constitution or State law." Persechini v. Callaway, 651 F.3d 802, 806 (8th Cir. 2011).

Involuntarily committed individuals "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982). Committed individuals have a retained interest in reasonable care, safety, and freedom from undue restraint. Id. But that right is not absolute and must be balanced with legitimate interests of the state. Id. at 321-22. As explained by the Eighth Circuit:

> Substantive due process offers only limited protections and only guards against the exercise of arbitrary and oppressive government power." Hawkins, 316 F.3d at 780. "Before official conduct or inaction rises to the level of a substantive due process violation[,] it must be so egregious or outrageous that it is conscience-shocking." Burton v. Richmond, 370 F.3d 723, 729 (8th Cir.2004) ( Burton II ) (citing County of Sacramento v. Lewis, 523 U.S. 833, 848 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); Hawkins, 316 F.3d at

6

780). . . . "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." 523 U.S. at 847 n. 8, 118 S.Ct. 1708.

Beck v. Wilson, 377 F.3d 884, 890 (8th Cir. 2004) (explaining the standard applicable when determining whether a involuntarily committed individual's due process rights have been violated).

Moreover, when the court engages in the test to balance the rights of the individuals against the relevant state interest, "decisions made by the appropriate professionals are entitled to a presumption of correctness . . . ." Youngberg, 457 U.S. at 324. Accordingly, "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgement." Id. at 323.

    1.    Protected Liberty Interest

Montin asserts two due process violations occurred as a direct result of the LRC policy preventing him from taking unsupervised walks around the grounds of the LRC. First, he argues his right to be free from unnecessary bodily restraint has been violated. Second, Montin asserts the daily walks were part of his treatment and, under Nebraska law, he is entitled to "the least restrictive treatment program that is consistent with the treatment needs of the person and the safety of the public." Neb. Rev. Stat. § 29-3702(2).

      a.      Unnecessary Bodily Restraint

Youngberg established that involuntarily civilly committed individuals have a right to be free from unnecessary bodily restraint. Youngberg, 457 U.S. at 319. That case involved a challenge to the length of time it was appropriate to keep a civilly committed individual in shackles. Other cases addressing bodily restraint in the setting of a prison or mental health care institution typically involve severe physical limitations or impositions such as placing an individual in full restraints, strapping an individual to a bed, or forcing an individual to take medication against his or her will. See, e.g., Heidemann v. Rother, 84 F.3d 1021, 1029-30 (8th Cir. 1996)(case involving the physical restraint of a mentally and physically disabled student). See also Doe v. Gaughan, 808 F.2d 871 (1st Cir. 1986)(claims involving restraints and seclusion); Lanman v. Hinson, 529 F.3d 673 (6th Cir. 2008)(involving physical restraint); LaBlanc v. San Bernardino County Bd. of Sup'rs, case no. cv0704361, 2010 WL 5559683 (C.D. Cal. 2010)(involving the use of handcuffs and restraints on a civilly committed detainee); Doe by Roe v. Gaughan, 617 F.Supp. 1477 (D. Mass. 1985)(challenging use of physical restraints and seclusion); U.S. v. Bryant, 670 F.Supp. 840, 843-44 (D. Minn. 1987)(addressing the propriety of when a detainee may be forced to take medication).

Montin attempts to argue that revoking his right to take leisurely unsupervised walks around the LRC campus is tantamount to forcing him to take medication or strapping him to a bed. The argument is without merit. Montin is unable to cite to any cases in which preventing an institutionalized individual from strolling around a facility unsupervised rises to the level of "unnecessary bodily restraint," nor does the court see any similarity. Montin is not prohibited from walking; he can walk outside while under the supervision of the LRC staff. Denying his ability to take unsupervised walks simply does not rise to the level of

8

"bodily restraint" contemplated in Youngberg.[1]  See e.g., Lieberman v. Budz, case no. 03c2009, 2009 WL 1437609 (N.D. Ill. 2009) (finding confinement to a room for several hours a day during which he was denied personal property did not rise to the level of the clearly established constitutional right to be free from bodily restraint addressed in Youngberg).

      b.     Statutory Requirement for Least Restrictive Treatment Program.

While state statutes may be a source of a protected liberty interest for the purposes of due process, the Eighth Circuit recently reaffirmed that due process claims based on alleged violations of state statues should be narrowly construed. See Strutton v. Meade, 668 F.3d 549 (8th Cir. 2012). Strutton involved a civilly committed sex offender who was challenging the adequacy of his treatment. He raised a due process claim based on a

---

[1] Montin also makes the somewhat muddled argument that the fact the policy is not applied to "all potentially escape-minded" patients and that Montin did not receive an "individualized" evaluation of his threat to the public further implicates his constitutional right to due process. Filing No. 115, n.102. This argument looks much like the equal protection claim Montin acknowledges he abandoned. The LRC's policy, as articulated in the affidavit Bill Gibson, the LRC administrator, is that only patients whose discharge is imminent may participate in unsupervised activities, none of which occur on the LRC grounds. Filing No. 110-1, ¶5. Montin does not dispute this assertion, but argues that under LRC policy "[d]ischarge planning" begins at the time of admission for all patients. Filing No. 113-35. Montin fails to appreciate the difference between the LRC's long-term goal of trying to work each individual toward eventual discharge and having an individual complete successful treatment and be on the cusp of release. Under LRC policy only the latter may be eligible for certain unsupervised activities, all of which occur outside of the LRC. Montin points to no case law that prohibits the LRC from having different policies for patients whose discharge is imminent and for patients - like Montin –who are not close to discharge status.

Missouri statute that mandated the control, care, and treatment of a committed individual until he or she improves to the point of being able to be released. In addressing whether the alleged violation of the state statute provided the grounds for a due process claim, the Strutton court stated:

> We remain cautious not to turn every alleged state law violation into a constitutional claim. Only in the rare situation when the state action is "truly egregious and extraordinary" will a substantive due process claim arise. See Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104–05 (8th Cir.1992). This is why the district court properly analyzed Strutton's claims to determine whether the state action of eliminating the psychoeducational classes and modifying the process groups was so arbitrary or egregious as to shock the conscience. See United States v.Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty.' " (quoting Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952) and Palko v. Connecticut, 302 U.S. 319, 325–326, 58 S.Ct. 149, 82 L.Ed. 288 (1937))).

Strutton, 668 F.3d at 557-58. Strutton held that even though a facility significantly reduces the plaintiff's treatment and therapy sessions and increases the use of a "restriction table" where residents were not physically restrained, but were only allowed to leave the table for certain activities such as meals and an hour of exercise, the policies did not "shock the conscious" so as to implicate the right to substantive due process. Id. at 558.

Neb. Rev. Stat. § 29-3701(2) requires that Montin be placed in the "least restrictive available treatment program."[2] However, even assuming the unsupervised walks can truly

---

[2] The Hayes County District Court has consistently found placement at the LRC is the least restrictive treatment program for Montin. It is not clear the statute requires a more detailed investigation into Montin's treatment at LRC.

be considered part of Montin's "treatment program"[3] for the purposes of the statute in question, and that the unsupervised walks represent the least restrictive available option for treatment, the LRC revocation of those walks was not egregious or extraordinary and does not shock the conscience. Montin remains able to take advantage of the LRC's outdoor facility to participate in supervised activities. The outdoor facility contains trees, shrubs, a grass yard area, a basketball court, and other amenities. Thus, even assuming the LRC has violated the statute in question, the policy regarding the termination of unsupervised walks does not rise to the level of egregious conduct required to implicate substantive due process considerations. See also Thielman v. Leean, 140 F. Supp. 2d 982, 993 (W.D. Wisc. 2001).

    2.    Professional Judgment Standard

Restrictions on an involuntarily civilly committed individual's liberty must be reasonably related to a legitimate government objective; however, states "enjoy wide latitude in developing treatment regimens" for mental patients. Kansas v. Hendricks, 521 U.S. 346, 368 n.4 (1997); see also Youngberg v. Romeo, 457 U.S. 307, 324 (1982)(finding professionals in charge of decision making and policy decisions are entitled to a

---

[3] Montin's characterization of the unsupervised walks as a part of his treatment regimen is unconvincing. Montin implies that such walks were a court ordered condition of his therapy. The evidence clearly reveals the Hayes County District Court gave permission for the LRC to allow Montin to take such walks at the discretion of the LRC's treatment team who, in turn, rely upon LRC policy regarding such privileges. In the reports to the court, the treating physicians continually note Montin is uncooperative with therapy, clearly making a distinction between what the treatment team considers therapy and what the team considers a privilege granted by the LRC – i.e. his activities around the grounds. While the evidence reveals the walks may have some therapeutic benefit, the Reports clearly characterize such walks as discretionary privileges and are not described anywhere as a necessary part of Montin's treatment plan.

"presumption of correctness"). Professionals are entitled to significant deference in determining whether their conduct violated a committed individual's constitutional rights. Youngberg, 457 U.S. at 321-22. "A decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Youngberg, 457 U.S. at 323. Such judgment extends to administrators "making professional judgments of their own, encompassing institutional concerns as well as individual welfare." Cameron v. Tomes, 990 F.2d 14, 20 (1st Cir. 1993).

In short, the court must defer to the interest "of the institution's administrators when evaluating the relationship between the challenged condition and the government's interest." See Youngberg, 457 U.S. at 322-23 ("there certainly is no reason to think judges or juries are better qualified than appropriate professionals in making decisions"); see also Thielman, 140 F. Supp. 2d at 991 (deferring to the judgment of administrators even if a "more tailored policy" could be implemented).

Even assuming Montin has a protected interest which is implicated by denying access to unsupervised walks, no due process violation has occurred. The LRC policy, which first suspended and then eliminated unsupervised walks around the grounds, was enacted for safety purposes. That is, the LRC had concerns for the public safety after one of its residents "eloped" from the grounds – a concern that Plaintiff acknowledges is a legitimate government interest. Plaintiff has not provided any evidence to show the LRC's facility-wide policy regarding the suspension and/or termination of unsupervised strolls around the grounds "represents a substantial departure from accepted professional judgment, practice or standards." Youngberg, 457 U.S. at 323. Further, the court cannot substitute its judgment for that of the administrators of the institution unless there is "substantial evidence

12

in the record to indicate that the officials have exaggerated their response" to security issues. Bell v. Wolfish, 441 U.S. 520, 547-48 (1979).

This court does not find the LRC policies regarding the termination of unsupervised walks on its grounds represent a substantial departure from accepted professional judgment, and it will defer to the professionals in charge of the LRC to determine a reasonable way to keep its residents and the general public safe.

Montin's substantive due process rights were not violated. To the extent Motin has raised concerns over procedural due process, those claims are also without merit because, as previously discussed, the court has found Montin has not been deprived of a "constitutionally protected life, liberty, or property interest" – a prerequisite to finding a violation of procedural due process. Mulvenon v. Greenwood, 643 F.3d 653, 657 (8th Cir. 2011). Therefore, all of Montin's alleged constitutional claims must be denied.[4]

Accordingly,

IT IS ORDERED:

1)       The parties' stipulated facts, (filing no. 104), are adopted.

2)       Plaintiff's motion for summary judgment, (filing no. 111) is denied.

---

[4] "Because the due process requirements of Nebraska's Constitution are similar to those of the federal Constitution, we apply the same analysis to [the defendant's] state and federal constitutional claims." State v. Nelson, 282 Neb. 767, 784, 807 N.W.2d 769, 784-85 (Neb.App. 2011)(citing State v. Hookstra, 263 Neb.116, 638 N.W.2d 829 (2002); Marshall v. Wimes, 261 Neb. 846, 626 N.W.2d 229 (2001)). Accordingly, Montin's claims based on the Nebraska constitutional right to due process also fail.

3)   Defendant's motion for summary judgment, (filing no. 108), is granted.

4)   This case is dismissed in its entirety.

5)   Judgment shall be entered by separate document.

DATED this 12th day of June, 2012.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.